COPY                                                    FILED                    FAXED

1   Rosemary M. Rivas (State Bar No. 209147)          2010 MAR 24  PM 3: 22
2   rrivas@finkelsteinthompson.com
    Mark Punzalan (State Bar No. 247599)              CLERK, U.S. DISTRICT COURT
3   mpunzalan@finkelsteinthompson.com                 CENTRAL DIST. OF CALIF.
                                                          LOS ANGELES
4   **FINKELSTEIN THOMPSON LLP**                      BY_____
    100 Bush Street, Suite 1450
5   San Francisco, California 94104
    Telephone: (415) 398-8700
6   Facsimile: (415) 398-8704

7

8   [Additional Counsel Listed on Signature Page]

9   Counsel for Plaintiffs Kenneth Martin Gardner and Alice Brandt

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12  KENNETH MARTIN GARDNER and   Case No.  **CV10 - 02140 PA (CWx)**
13  ALICE BRANDT, on behalf of
14  themselves and all others similarly    **CLASS ACTION COMPLAINT**
    situated,
15                                          **JURY TRIAL DEMANDED**
16              Plaintiffs,

17           v.

18  HEALTH NET, INC.
19
20              Defendant.

21

22       Plaintiff Kenneth M. Gardner ("Plaintiff Gardner") and Plaintiff Alice

23  Brandt ("Plaintiff Brandt") bring this class action suit against Health Net, Inc.

24  ("Health Net" or "Company").  Plaintiffs make the following allegations, except as

25  to allegations specifically pertaining to Plaintiffs and Plaintiffs' counsel, based

26  upon the investigation undertaken by Plaintiffs' counsel, which included, *inter*

27  *alia*, review and analysis of court documents, Defendant's website, various other

28

                                          1
                          CLASS ACTION COMPLAINT

websites, various news articles, and correspondence to affected individuals. In support of Plaintiffs' Class Action Complaint, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), as the amount in controversy exceeds five million dollars ($5,000,000.00), at least one Class member has diverse citizenship from Defendant, and there are more than 100 class members. This Court has personal jurisdiction over the parties because Defendant conducts substantial business in this state, has systematic and continuous contacts with this state, and has agents and representatives that can be found in this state.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in this judicial district.

## NATURE OF ACTION

3.      This is a class action lawsuit brought on behalf of Plaintiffs and all other persons similarly situated against Health Net for its failure to adequately protect the private personal information of its current, former, and potential clients, including but not limited to their protected health information as defined by Health Insurance Portability and Accountability Act ("HIPAA"), Social Security numbers ("SSNs"), financial information, bank account numbers and other information ("Sensitive Information") for approximately 1.5 million Health Net enrollees. As the Ninth Circuit has recognized, injuries "flow from the disclosure of one's confidential medical records, which often contain some of the most sensitive and intimate information…".[1]

4.      Health Net unlawfully failed to maintain reasonable systems and procedures to protect Plaintiffs and the Class' Sensitive Information. As reported

---

[1] *Cooper v. Federal Aviation Admin.*, No. 08-17074, 2010 WL 597486, at *6 (9th Cir. Feb. 22, 2010).

by Kroll Inc., a computer forensic consulting firm retained by Defendant, the data that was taken had not been encrypted or otherwise protected from access by unauthorized persons or third parties.

5.     Plaintiffs seek recovery for harm suffered as a result of Defendant's practices.

## PARTIES

6.     Plaintiff Gardner is a current resident of Chandler, Arizona.  Plaintiff entered into contracts with Defendant for health care services for himself and his dependents while he was a resident of Arizona and of California.

7.     Plaintiff Brandt is currently a resident of Montgomery, Alabama. Plaintiff Brandt entered into a contract with Defendant for healthcare services for herself while she was a resident of New York.

8.     Defendant Health Net, Inc., a Delaware corporation headquartered in Woodland Hills, California.  Health Net is an integrated managed care organization that delivers managed health care services through health plans and government-sponsored managed care plans.  Health Net and its subsidiaries provide commercial and government-sponsored Health Plans to 27 states and the District of Columbia, with a total enrollment of 6 million consumers. Health Net is among the nation's largest publicly traded managed health care companies and states that its mission is to help people be "healthy, secure and comfortable." The company's health plans and government contracts subsidiaries provide health benefits to more than 6 million individuals across the country through group, individual, Medicare, Medicaid and TRICARE and Veterans Affairs programs. Health Net's behavioral health subsidiary, MHN, provides mental health benefits to approximately 6.5 million individuals in all 50 states. The Company's subsidiaries also offer managed health care products related to prescription drugs, and offer managed health care product coordination for multi-region employers and administrative services for medical groups and self-funded benefits programs.

3

CLASS ACTION COMPLAINT

## **PLAINTIFFS' FACTS**

9.      Plaintiff Gardner was enrolled in a Health Net health insurance plan through his employers: (a) Wordsmart located in San Diego, California, from approximately October 2001 through January 2003, (b) Einstein Industries located in San Diego, California, from approximately February 2004 to some time later in 2004; (c) M/UX, Inc. located in Sacramento, California, from August 1, 2007 through December 2007, which was extended  through a COBRA policy from January 1, 2008 through May 1, 2008, and (d) APEX Investigations located in Arizona from approximately August 2008 through December 2009.

10.      Plaintiff Alice Brandt was enrolled in the Health Net Insurance Plan through her employer ARB Inc., New York, New York, from approximately 2001 through 2002 which was extended through a COBRA policy until 2003 and then continued the coverage as a direct pay individual policy until 2007.

11.      In December 2010, Plaintiffs received a letter from Health Net stating that their Sensitive Information, obtained in connection with Plaintiff's contractual agreements with Health Net, was on an unencrypted portable disk which had been stolen from a Health Net office on or about May 14, 2009.  *See* Exhibit 1.  This disk contained Sensitive Information that Plaintiffs and the Class had submitted to Health Net from 2002 to mid-2009.

12.      As a result of this breach notice, on or about January 31, 2010, Plaintiff Gardner signed up for the monitoring offered through Debix Fraud Resolution Services ("Debix").  Moreover, he drafted and filed an initial *pro se* complaint with a filing fee of $350, and a service process fee of $75.00 in *Gardner v. Health Net, Inc.*, No. CV-09-2628-PHX-DGC (D. Az.).  Further, as instructed by Health Net, he obtained and reviewed his annual credit reports at www.annualcreditreport.com and checked his medical bills and other financial statements.  He also incurred time, travel related costs, cellular telephone minutes, and postage expenses in taking these steps as a result of the breach as well as spent

4

CLASS ACTION COMPLAINT

1  time obtaining and reviewing bank statements, reviewing medical benefits and

2  billing statements, obtaining his credit reports and reviewing them.

3         13.    Similarly, as a result of the breach notice, Plaintiff Brandt: ordered

4  and reviewed monthly credit reports from her Chase Identity Theft Protection

5  Service; contacted and filed a report with the FTC; placed a 90-day fraud alert on

6  her credit; contacted in person and filled out a report with the Alabama U.S.

7  Attorney; contacted Health Net in order to report instances of fraudulent activity;

8  and requested copies of her medical records that were exposed by the breach.  In

9  March of 2010, Plaintiff Brandt signed up for the monitoring offered through

10 Debix.  As a result of the breach, Plaintiff Brandt has had numerous fraudulent

11 attempts to use her identity starting in June 2009 including but not limited to

12 attempts to open credit and/or loan accounts with Chrysler Financial, Hayt and

13 Landau, Real Page Inc., Bank of America, Capital One, Wells Fargo and Credco.

14 Accordingly, Plaintiff Brandt spent time and money such as travel-related costs,

15 cellular telephone minutes, and postage to get fraudulent charges removed from

16 her credit.

## FACTUAL BACKGROUND
### Security Breaches Lead to Identify Theft

19        14.    By way of background, the United States Government Accountability

20 Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity

21 thieves can use identifying data such as Social Security numbers to open financial

22 accounts and incur charges and credit in a person's name[2]. As the GAO Report

23 states, this type of identify theft is the "most damaging" because it may take some

24 time for the victim to become aware of the theft and can cause significant harm to

25 the victim's credit rating.

[2] *See* http:///www.gao.gov/new.items/d07737.pdf.

CLASS ACTION COMPLAINT

15. In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records," as well as the damage to their "good name."

16. According to the Federal Trade Commission ("FTC"), identity theft victims must spend countless hours and money repairing damage to their good name and credit record. [3] Identity thieves use stolen personal information such as SSNs for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud. In addition, a person whose personal information has been compromised may not see any signs of identity theft for *years*. According to the GAO Report:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to one year or more before being used to commit identity theft. Further, once stolen data has been sold or posted on the web, fraudulent attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

17. Moreover, once Sensitive Information has been compromised, criminals often trade the information on the "cyber black-market" for a number of years. As a result of recent large-scale data breaches, identity thieves and cyber criminals have openly posted stolen credit card numbers, SSNs, and other Sensitive Information directly on various Internet websites essentially making the information publicly available. One study found hundreds of websites which displayed stolen Sensitive Information and that none of these websites were blacklisted by Google's "Safe Browsing list." As the study concluded:

> It is clear from the current state of the credit card black-market that cyber criminals can operate much too easily on the Internet. They are not afraid to put out their email addresses, in some cases phone numbers and other

---

[3] *See* FTC Identity Theft Site, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/about-identity-theft.html.

CLASS ACTION COMPLAINT

credentials in their advertisements. It seems that the black market for cyber criminals is not underground at all. In fact, it's very "in your face."[4]

18. Additionally, with health-care related identity theft fraud, a recent report indicated that the "average total cost to resolve an identity theft-related incident, … came to about $20,000."[5] Moreover, more than half of the victims said they had to pay for the care they didn't receive out of their own pocket to restore coverage. Almost 50% said they lost their health care coverage as a result of the incident, while nearly one-third said their insurance premiums went up after the event. Finally, 40 percent of consumers said they were never able to resolve their identity theft.

19. Identity theft crimes often include more than just crimes of financial loss. Identity thieves also commit various types of government fraud, such as: obtaining a driver's license or official identification card in the victim's name but with the thief's picture; using the victim's name and SSN to obtain government benefits; or filing a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's SSN, rent a house or receive medical services in the victim's name, and may even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name. Further, loss of private and personal health information can expose the victim to extensive damages such as loss of reputation, loss of job employment, black mail and other significant damages.

---

[4] http://www.stopthehacker.com/2010/03/03/the-underground-credit-card-blackmarket/

[5] http://news.cnet.com/8301-27080_3-10460902-245.html

## **Health Net's Privacy Policy**

20. Health Net represented to Plaintiffs and the Class that it would protect their Sensitive Information. On Health Net's website, it states the following confidentiality and privacy policy:

**Web Privacy Policy**

Health Net, Incorporated and its affiliated companies (collectively "Health Net") are committed to maintaining the privacy of those who communicate with us through our Web site (the "site").

We have created this Privacy Policy, effective November 5, 2002, in order to demonstrate our firm commitment to your privacy and to make clear what happens to any information we collect. This Policy also discloses our information gathering and dissemination practices for the site.

Health Net has a Notice of Privacy Practices that describes how it uses and discloses protected health information; the individual's rights to access, to request amendments, restrictions, and an accounting of disclosures of protected health information; and the procedures for filing complaints. You may view the **Notice of Privacy Practices**.

Occasionally, the terms of this Policy may change. We reserve the right to change this Policy without notice to our users.

Your use of our site is also subject to the **Terms of Use**.

**Security**
Our site requires users to give us unique identifiers in order to log into many areas of the site. These identifiers include, as appropriate, the subscriber identification number, provider identification number, employer identification number, and/or an assigned personal identification number (PIN). We utilize these unique identifiers to verify the user's identity and eligibility, in order to protect our members from the release of sensitive or personally identifiable information to unauthorized users.

You must take responsible and appropriate steps to safeguard your identification numbers to help protect your privacy.

Our site has additional security measures in place to protect against the loss, misuse and/or unauthorized alteration of the information under our control, including but not limited to:

- Built-in firewalls (a combination of computer hardware and software) to keep unauthorized users from accessing information through Health Net's computer network.

- Encryption technology, including Secure Sockets Layer (SSL) for certain communications.

8

CLASS ACTION COMPLAINT

We aim to protect and keep confidential all information which is voluntarily provided to Health Net through this site, and to treat such information with the same consideration and confidentiality as any information sent to us by the US mail or communicated to us by telephone. The nature of the Internet, however, prevents us from guaranteeing the confidentiality of information we receive through the site or via e-mail. If you wish, you may contact us instead by telephone at the telephone number listed on your ID card.

**Outside Parties**

We have hired outside vendors and contractors to assist us with the development, improvement and maintenance of this site. We have taken measures to ensure that any personally identifiable information given to us remains with Health Net and is not passed through to the outside vendor or contractor, unless the user voluntarily gives, or authorizes us to give, the vendor that information.

Please note that this site contains links to other parties' websites. Health Net is not responsible for the privacy practices or the content of such other websites.

**Information Gathering**

Personally Identifiable Information. Personally identifiable information means data unique to the user, such as a name, address, email address, social security number, date of birth, or telephone number. Health Net will not collect personally identifiable information about you unless you or your representative provide us that information voluntarily. Health Net may collect personally identifiable information about you from you or your representative on application and order forms, through requests for information, products or services, or in order to fulfill orders, deliver requested materials and information about Health Net to you, respond to your questions, or deliver a product or service. We also use your contact information to get in touch with you when necessary. Users may opt-out of receiving future mailings; see the "Opt-Out/Changes" section below.

If you provide personally identifiable information to us voluntarily through our site, we will not sell, license or transmit that information outside Health Net and those affiliated companies involved in administering or providing services for our health benefits plans, unless you or your representative expressly authorize us to do so.

We will disclose personally identifiable information in compliance with applicable laws and regulations and will require the recipient to protect the information and use it only for the purpose provided.

**Internet Protocol Addresses**. An Internet Protocol address is a number that automatically identifies the computer/machine you have used to access the Internet, the way a phone number identifies you on the phone system. The address enables our server to send you the webpages that you want to visit, and it may disclose the server owned by your Internet Service Provider. We utilize your Internet Protocol address to help diagnose problems with our server and to administer our site.

9

CLASS ACTION COMPLAINT

**Cookies**. Cookies are pieces of information that a website transfers to a user's computer for purposes of storing information about a user's preferences. Just as many major Web sites use cookies as a standard practice to provide useful features when a user visits the site, we use cookies to deliver content specific to your interests. Cookies in and of themselves do not personally identify users, although they do identify a user's computer. A user can set his or her browser to refuse cookies, but then he or she may not be able to take full advantage of the site.

**General Information**. Health Net routinely gathers quantitative information on website activity, including the number of users to the site, and the pages visited. No personally identifiable information is collected in this routine activity, and Health Net reserves the right to share such information with others.

**Opt-Out/Changes**

At certain locations on our site where we request information about the user, our site provides users the opportunity to opt-out of receiving communications from us. Users may also review and request changes to their personally identifiable information that Health Net has collected, including removing their information from our database in order to prevent receipt of future communications or to halt receipt of our website services:

Privacy Information

**Confidentiality Guideline**

Health Net, Inc. and all of its subsidiaries/affiliates ("Health Net") have adopted a strict guideline regarding the confidentiality of certain information provided to Health Net associates. This guideline applies to all Health Net associates as described below:

All Associates are prohibited from any unauthorized access to, use or disclosure of patient ("Member") or health care provider information, Health Net proprietary information, including, but not limited to, medical records, claims, benefits or other administrative data that is personally identifiable, in addition to, Health Net quality improvement programs, reports, and disease management information (hereinafter, collectively referred to as "Confidential Information").

Associates must hold in strict confidence, and not copy, disclose or permit the disclosure to any person, other than as stated in Health Net's Notice of Privacy Practices, any Confidential Information. Associates must comply with all Health Net policies and procedures concerning the safeguarding of all Confidential Information. Associates must comply with all applicable state and federal laws and regulations regarding Confidential Information.

CLASS ACTION COMPLAINT

21.    These representations are collectively referenced herein as Health Net's "Privacy Policy."[6]

### The Data Breach at Health Net

22.    On or about May 14, 2009, Health Net learned that a portable computer disk drive that had been transported between California and Connecticut, containing protected health information – including, defined under HIPAA, SSNs, and bank account numbers and other information – of approximately 1.5 million Health Net enrollees was stolen from defendant Health Net's Shelton, Connecticut office.  This stolen data encompassed the time period of 2002 until mid-2009.

23.    Health Net took no action to promptly inform the plaintiffs, Attorneys General's Offices, or any other government agency authorities, regarding this missing sensitive information.  In fact, it waited until November 19, 2009 to inform Attorneys General and until November 30, 2009, or more than 6 months after the breach, before any notification was given to its enrollees.  Health Net's failure to notify its enrollees of this data breach until more than six months after it occurred meant that those enrollees, including Plaintiffs and the other members of the Class, had no reason to check their accounts and credit reports for suspicious activity arising from the breach during that time.  In fact, Plaintiff Brandt did not realize fraudulent activity on her credit report until the Notice letter alerted her to the breach — or five months after the first such fraudulent activity.

24.    In addition, Health Net's notice to Plaintiffs and the other members of the Class members squarely placed the burden on them, rather than Health Net to investigate and protect themselves from Health Net's heretofore undisclosed data breach.  Indeed, Health Net instructed its enrollees, including Plaintiff and the

---

[6] Plaintiff Gardner and Plaintiff Brandt were enrolled with plans specifically through subsidiaries of Health Net, Inc., namely, Health Net of Arizona, Inc. and Health Net Life Insurance Company for Gardner and for Brandt from Health Net through her New York employer.  Health Net, Inc., however, as the parent company to these subsidiaries, it provided the same or substantially similar Privacy Policy to subscribers of each of its subsidiaries' plans.

11

CLASS ACTION COMPLAINT

1  other members of the Class, to notify the three credit bureaus and discuss placing a

2  fraud alert on their credit report, regularly review all medical bills and benefits

3  statements, order and check all credit reports all at their own time and expense.

4      25.    Health Net offered Plaintiffs and Class members two years of credit-

5  monitoring services at no charge, $1 million of identity theft insurance coverage

6  and enrollment in fraud resolution services for two years, if needed. Finally, Health

7  Net has also stated that "Additionally, if members experience any identity theft

8  between May 14, 2009 and the date of this letter, (November 30, 2009), Health Net

9  has also arranged for Debix Fraud Resolution Services to restore your identity at

10  no cost to you." Thus, identity restoration is ostensibly unavailable if it occurs

11  after November 30, 2009. In other words, if identity theft occurs the day after

12  notice was mailed, (but perhaps not yet received), the resolution service would be

13  unavailable. However, if a Class member were a victim of identity theft *before*

14  they were notified that their data was stolen from Health Net, then somehow

15  divining the source of the breach, they could contact Health Net for the restoration

16  service.

17      26.    Upon information and belief, Health Net, knowing that protected

18  sensitive information was subject to strict privacy and security protections of

19  HIPAA, and other standards and regulations, delayed and otherwise failed to

20  properly and timely notify Plaintiffs, Attorneys General Offices, or any other

21  government authorities, regarding this missing sensitive information.

22      27.    Upon information and belief, Health Net subsequently learned that the

23  computer disk drive containing the stolen information pertained to approximately

24  1.5 million individuals and comprised 27.7 million scanned pages of over 120

25  different types of documents such as insurance claim forms, membership forms,

26  appeals and grievances, correspondence and medical records from 2002 to mid-

27  2009. These documents contained Sensitive Information including names,

28  addresses, SSNs, protected health information and financial information such as

CLASS ACTION COMPLAINT

bank account numbers. The foregoing protected health information and private information was not protected by encryption as that term is defined under HIPAA, 45 C.F.R. § 164.304, and other standards and regulations.

28. Health Net hired Kroll, Inc., ("Kroll") a computer forensic and security firm, to independently investigate the incident. Kroll determined that the stolen data was unencrypted, and thus more vulnerable to exploitation.

29. Based on information and belief, Kroll reported a deliberate disregard of Health Net policies and procedures and requirements under federal law, including but not limited to, HIPAA, Health Information Technology for Economic and Clinical Health Act ("HITECH") (National Institute for Standards & Technology ("NIST") and Federal Information Processing Standards ("FIPS")) International Organization for Standardization ("ISO") standards, Payment Card Industry ("PCI") Data Security Standards, and Gramm Leach Bliley Act Standards. Health Net intentionally decided not to encrypt this private and protected health information and other Sensitive Information.

30. Based on information and belief, in the process of creating the disk drive that contained protected Sensitive Information, Health Net did not create a log file of the collection and transfer of the data that was included on the disk drive. Without the log file, Defendant has no clear record of what was taken.

31. Accordingly, once the disk was discovered stolen, Health Net's failure to create a log file further increased the risk of disclosure of Sensitive Information to unauthorized individuals. This also constituted a breach of the Health Net's obligation to safeguard the Sensitive Information because Health Net did not readily have information as to the contents of the disk drive. As a consequence, Health Net replicated the entire creation of the disk drive, thus delaying efforts to safeguard or otherwise mitigate the data breach—not to mention doubling the risk of theft in the first place.

32.    Upon information and belief, Health Net did not notify Plaintiffs whose Sensitive Information was, or was reasonably believed to have been, accessed by an unauthorized person through the Breach in any manner, including but not limited to, written, telephone, electronic or authorized substitute notice until it posted a notice on its website on November 18, 2009 and began sending letters in a rolling mailing on November 30, 2009.

33.    Upon information and belief, no law enforcement agency determined that the notification to affected plaintiffs would have impeded a criminal investigation and requested that the notification be delayed.

34.    Upon information and belief, the design and implementation of Health Net's purported policies and procedures regarding the security of protected health information and other Sensitive Information were inappropriately ineffective in reasonably safeguarding protected health information and other Sensitive Information.

35.    Upon information and belief, Health Net failed to effectively supervise and train its workforce (including both employees and independent contractors) on the policies and procedures with respect to the appropriate maintenance, use and disclosure of protected health information and other Sensitive Information.

**Misrepresentations & Omissions**

36.    On December 7, 2009, Connecticut's Attorney General, Richard Blumenthal, released a statement expressing concern that Health Net's public account of the breach was significantly different than the Kroll's conclusions. Namely, while Kroll concluded the data was stolen, Health Net's statements claimed it was only "missing".[7] Moreover, Attorney General Blumenthal stated:

> "Health Net's assessment of the cause of the drive's disappearance is heavily at odds with conclusions reached by Kroll," Blumenthal said.

---

[7] http://www.ct.gov/ag/cwp/view.asp?a=3673&Q=451826

CLASS ACTION COMPLAINT

"The most glaring inconsistencies are Health Net's explanations for its delay in reporting the data breach, its characterization of the likely cause of that data breach, and its assessment of the accessibility level of the data that was contained on the missing disk drive.

"Health Net has emphasized its inability to promptly access data on the disk to indentify and notify those whose information was compromised, and offered assurances that the data could not be viewed without special software. These claims contradict Health Net's own private security firm, which claims the data could be easily accessed through common commercially available software -- and indicating another Health Net office in Rancho Cordova may have had a copy of the compromised information on hand to identify.

"Health Net has gone out of its way to dismiss and downplay this serious security breach when it should have been focusing on notifying and protecting people who may be at risk of financial fraud or having health information leaked."

37.     In response, Health Net spokeswoman Alice C. Ferreira continued to downplay the threat to consumers stating that the Kroll report "does not reach any definitive conclusion about what happened to the missing disk drive. The report states that there could have been numerous scenarios that explained the disappearance of the missing drive, and that there was insufficient evidence to determine, which, if any, of the scenarios was the most likely."[8] On January 13, 2010, Attorney General Blumenthal filed suit against Health Net of Connecticut, Inc.[9]

38.     Other instances of misrepresentations and omissions include:

a.  Health Net claimed that it had a policy of encrypting all data yet Kroll's report indicated that the stolen data was not encrypted.

---

[8] http://articles.courant.com/2009-12-08/news/09120812522855_1_health-net-s-northeast-unitedhealthcare-hard-drive

[9] http://www.ct.gov/ag/cwp/view.asp?Q=453916&A=3869

b.  Health Net claimed that the stolen data could only be viewed with special software[10] implying that the average thief could not access the data.  Yet Kroll's report indicated that "common, commercially available" software could decode it.[11]

c.  Health Net told Plaintiffs and Class members in the Notice Letters that since the data could not be viewed without special software, "we believe the risk to you is low."  However, they knew that "common, commercially available" software could decode the data when making this representation.

d.  Health Net claims that there have been no indications that any enrollee has experienced identity theft[12] yet Plaintiff Alice Brandt has alleged that she had numerous fraudulent attempts to use her identity starting in June 2009 including, but not limited to fraudulent attempt to get credit with Chrysler Financial, Hayt and Landau, Real Page, Inc, Bank of America, Capital one, Wells Fargo and Credco.

39.      Plaintiffs here were thus not only injured as a result of the increased risk of fraud to which they are now subjected, but has also been harmed by virtue of the materially misleading statements downplaying the seriousness of the breach. These misstatements further injured and harmed Plaintiffs and the other members of the Class because they (a) effectively steered a large majority of them away from enrolling in Health Net's credit monitoring services (thereby saving defendant a substantial amount of money), and (b) misrepresented to and

---

[10] http://ifawebnews.com/2010/01/15/conn-ag-sues-health-net-over-ethically-unacceptable-data-breach/; http://www.doj.nh.gov/consumer/pdf/health_net.pdf; Exhibit 1 (Notice Letter); http://healthnet.tekgroup.com/press_kits.cfm?presskit_id=13

[11] http://www.ama-assn.org/amednews/2009/12/21/bisc1224.htm

[12] http://www.allheadlinenews.com/articles/7017562325

CLASS ACTION COMPLAINT

1  concealed the truth from Class members concerning the true extent to which

2  Health Net's wrongful conduct placed their information in jeopardy.

3      40.    In addition, like Plaintiffs, many Class members incurred out-of-

4  pocket costs as a result of Health Net's actions. The time and effort expended,

5  inconvenience experienced, and out-of-pocket costs incurred by Plaintiffs and

6  other members of the Class constitute actual or consequential damages. They are

7  also necessary steps aimed at mitigating damages.

8      41.    Class members face a significant risk of identity theft, evidenced by:

9      a. Health Net's offer of free credit monitoring. Health Net would not offer

10        credit monitoring if identity theft was not a significant risk.

11     b. Health Net's instructions to Class members to take numerous

12        burdensome steps to protect themselves from identity theft. Health Net

13        would not recommend these steps if identity theft was not a significant

14        risk.

15     42.    In light of the identity theft risk, Class members spent time and money

16  responding to the breach.

17     43.    Health Net's two years of free credit monitoring is insufficient. Class

18  members need protection for more than two years. As noted above, the threat of

19  the fraudulent use of Sensitive Information often lasts much longer than two years.

20                    **Health Net's Wrongful Conduct**

21     44.    Health Net knew or should have known that its disk drives were not

22  encrypted or otherwise protected. Contributing to the problem was Health Net's

23  alleged failure to effectively supervise and train employees on policies and

24  procedures on the appropriate maintenance, use, and disclosure of protected health

25  information.

26     45.    Health Net's security failures included, but are not limited to, the

27  following:

28     a. Failing to maintain an adequate data security system to prevent data loss;

17

CLASS ACTION COMPLAINT

b.  Unjustifiably retaining Sensitive Information on its computer system for seven (and possibly more) years;[13]

c.  Failing to align data security processes with internal policies;

d.  Failing to mitigate the risks of a data breach and loss of data;

e.  Failing to encrypt Sensitive Information of plaintiffs;

f.  Failing to ensure the confidentiality and integrity of electronic protected health information it created, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

g.  Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

h.  Failing to implement technical policies and procedures that govern the receipt and removal of hardware and electronic media that contain electronic protected health information into and out of a facility to maintain their security in violation of 45 CFR 164.310(d)(1);

i.  Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

j.  Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 CFR 164.308(a)(6)(ii);

k.  Failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic protected health information in violation of 45 CFR 164.306(a)(2);

---

[13] http://ifawebnews.com/2009/11/24/missing-disk-drive-puts-1-5-million-health-net-members-info-at-risk/

18

l.  Failing to protect against an reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 CFR 164.306(a)(3);

m.  Failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 CFR 164.306(a)94);

n.  Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons in violation of 45 CFR 164.502 *et seq.*;

o.  Failing to effectively train all members of its workforce (including independent contractors involved in the data breach) on the policies and procedures with respect to protected health information as necessary and appropriate for the members of its workforce to carry out their functions and to maintain security of protected health information in violation of 45 CFR 164.530(b) and 45CFR 164.308(a)(5);

p.  Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information, in compliance with 45 CFR164.530(c); and

q.  Failing to maintain an effective and appropriate sanctions policy for members of its workforce (both employees and independent contractors) who failed to comply with the policies and procedures for the protection and safeguarding of protected heath information in violation of 45 CFR 165.530(e).

## **CLASS ACTION ALLEGATIONS**

46.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs brings this class action individually and on behalf of all other persons whose

1  Sensitive Information was stolen from Health Net's Shelton, CT offices (the
2  "Class"). The Class does not include Defendant, or its officers or directors.

3       47.    The Class is compromised of approximately 1.5 million persons,
4  making joinder of such cases impracticable. Disposition of the claims in a class
5  action will provide substantial benefits to the parties and the Court.

6       48.    The rights of each Class member were violated in a similar fashion
7  based upon Defendant's uniform actions. Some common issues present here are:

8      a.  Whether Defendant was negligent in collecting and storing Plaintiffs'
9         and Class members' Sensitive Information;

10     b.  Whether Defendant took reasonable steps and measures to safeguard
11        Plaintiffs' and Class members' Sensitive Information;

12     c.  Whether Defendant breached its duty to exercise reasonable care in
13        storing Plaintiffs' and Class members' Sensitive Information by storing
14        that information on its computer disks and systems in the manner in
15        which it did;

16     d.  Whether Defendant notified Plaintiffs and the Class of the data breach in
17        the most expedient time possible;

18     e.  Whether implied or express contracts existed between Defendant and
19        Class members;

20     f.  Whether Plaintiffs and the Class are at an increased risk of identity theft
21        or other malfeasance as a result of Defendant's failure to protect the
22        personal information of Plaintiffs and the Class; and

23     g.  Whether Plaintiffs and Class members have sustained damages, and if so,
24        what is the proper measure of those damages.

25      49.    Plaintiffs' claims are typical of the claims of the respective Class they
26 seeks to represent, because the Sensitive Information of Plaintiffs, like the
27 Sensitive Information of all Class members, was improperly stored and stolen by
28 unauthorized persons.

50.     Plaintiffs will fairly and adequately represent and protect the interests of the Class, in that they have no interests that are antagonistic to or that irreconcilably conflict with those of other Class members. Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of Plaintiffs' and Class members' claims. Plaintiffs and Class members have suffered harm as a result of Defendant's conduct. Certification of a class action to resolve these disputes will reduce the possibility of repetitious litigation involving hundreds of thousands of Class members.

## COUNT I

### Negligence

52.     Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

53.     Defendant requested and came into possession of Plaintiffs' and Class members' Sensitive Information, and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed. Defendant's duty arose from, *inter alia*, the industry standards discussed above.

54.     Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiffs' and Class members' Sensitive Information. The breach of security, unauthorized access, and resulting harm to Plaintiffs' and the Class were reasonably foreseeable, particularly in light of its inadequate data security system and failure to encrypt the data.

55.     Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Sensitive Information within Defendant's control.

56.     Defendant, through its actions and/or omissions, breached its duty to Plaintiffs and Class members by failing to have procedures in place to detect and

prevent access to Plaintiffs' and Class members' Sensitive Information by unauthorized persons.

57. But for Defendant's breach of its duties, Plaintiffs' and Class members' Sensitive Information would not have been compromised.

58. Plaintiffs' and Class members' Sensitive Information was stolen and accessed as the proximate result of Defendant failing to exercise reasonable care in safeguarding such information by adopting, implementing, or maintaining appropriate security measures and encryption.

59. Defendant also had a duty to timely disclose to Plaintiffs and Class members that their Sensitive Information had been, or was reasonably believed to have been, compromised. This duty arose from, *inter alia*, the state notification statutes requiring timely notification of data breaches. Defendant failed to notify Plaintiffs and Class members in a timely manner, waiting over six months to contact individuals affected by the breach.

60. Health Net's failure to comply with state notification statutes constituted *negligence per se*, satisfying the duty and breach elements of the negligence claim.

61. But for Defendant's breach of its duty to timely notify Class members, Plaintiffs and Class members would have had more time to otherwise protect themselves from the data breach.

62. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts; anxiety; emotional distress; loss of privacy; and other economic and non-economic losses.

# COUNT II

## Breach Of Implied Contract

63. Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

64. Defendant requested and came into possession of Plaintiffs' and Class members' Sensitive Information and had implied contracts with Plaintiffs and Class members to protect such information, by way of Plaintiffs and Class members providing Defendant with the requisite Sensitive Information.

65. The implied contracts arose from the course of conduct between Class members and Defendant, and Defendant's Privacy Policy provisions on Health Net's website.

66. The implied contracts required Defendant not to disclose Plaintiffs' and Class members' Sensitive Information to unauthorized third parties, and to safeguard the information from being lost and accessed.

67. Defendant did not safeguard Plaintiffs' and Class members' protected health information and Sensitive Information from being lost and accessed.

68. Because Defendant allowed unauthorized access to Plaintiffs' and Class members' protected health information and Sensitive Information and failed to safeguard the protected health information and Sensitive Information, Defendant breached its implied contracts with Plaintiffs and Class members.

69. A meeting of the minds occurred, as Plaintiffs and Class members agreed to provide their protected health information and Sensitive Information to Health Net in exchange for Health Net's agreement to, among other things, evaluate their applications and protect their protected health information and Sensitive Information.

70. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements,

1  credit card statements, and credit reports; time spent initiating fraud alerts; anxiety;

2  emotional distress; loss of privacy; and other economic and non-economic harm.

3  **COUNT III**

4  **Breach Of Express Contract**

5    71.  Plaintiffs repeats and realleges the allegations contained in each of the

6  paragraphs of this complaint as if fully set forth herein.

7    72.  In exchange for Plaintiffs and the Class providing Defendant with

8  protected health information and Sensitive Information, Defendant agreed to

9  consider and properly protect this Sensitive Information.

10    73.  Health Net expressly promised plaintiff and class members under their

11  HIPAA Notice of Privacy Practices that they only disclose health information

12  when required to do so by federal or state law.  Health Net further promised a

13  commitment to protecting health information about plaintiff and class members.

14    74.  Health Net was required by HIPAA law to make sure that plaintiff and

15  class members' health information was protected and to give a notice to plaintiff

16  and class members describing Health Net's legal duties and privacy practices with

17  respect to their health information.

18    75.  The contracts required Defendant not to disclose Plaintiffs and Class

19  members' protected health information and Sensitive Information to unauthorized

20  third parties, and to safeguard the information from being lost and accessed.

21    76.  Defendant did not safeguard Plaintiffs and Class members' protected

22  health information and Sensitive Information.

23    77.  The failure to meet the express promise and obligation of Health Net's

24  privacy practices constitutes an express breach of contract.

25    78.  Because Defendant allowed unauthorized access to Plaintiffs' and

26  Class members' Sensitive Information and failed to safeguard the Sensitive

27  Information, Defendant breached its contracts with Plaintiffs and Class members.

28

CLASS ACTION COMPLAINT

79.    A meeting of the minds occurred, as Plaintiffs and Class members agreed to provide their Sensitive Information to Health Net in exchange for Health Net's agreement to, among other things, evaluate their applications and protect their Sensitive Information.

80.    Health Net breached its Privacy Practices contract by not meeting the minimum level of protecting plaintiff and class members' health information, because it did not prevent against the breach of 1.5 million members private health information.  As a result of Health Net's breach, plaintiff and class members suffered and will contine to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts; anxiety; emotional distress; loss of privacy; and other economic and non-economic harm.

## COUNT IV

### Violation Of California Constitutional Right To Privacy

81.    Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

82.    Plaintiffs and Class members have a legally-protected privacy interest in their protected health information (as defined by HIPAA), SSNs, financial information, and bank account numbers.  Plaintiffs and the Class also have a reasonable expectation of privacy in such highly sensitive information.  Here, Plaintiffs and the Class entrusted Defendant with their Sensitive information under the assurance that Defendant would provide adequate protections (such as encryption) against the unauthorized disclosure of the Sensitive Information.

83.    As detailed herein, Defendant failed to take adequate measures to protect the Sensitive Information from unauthorized access, including, among other things, choosing not to encrypt the Sensitive information.  Defendant's actions constitute a serious invasion of privacy since Plaintiffs and Class members

1  now face an increased risk of identity theft due to their Sensitive Information being

2  compromised. As a result of Defendant's actions, Plaintiffs and the Class will

3  incur substantial costs and injury associated with various crimes of identity theft

4  and must continuously monitor whether any fraudulent financial accounts are

5  opened in their names. The egregiousness of this invasion of privacy is further

6  shown by Defendant's unreasonable delay in notifying Plaintiffs and the Class that

7  their Sensitive Information had been compromised.

8         84.    Plaintiffs and Class members suffered and will continue to suffer

9  actual damages including, but not limited to, expenses and/or time spent on credit

10  monitoring and identity theft insurance; time spent scrutinizing bank statements,

11  credit card statements, and credit reports; time spent initiating fraud alerts; anxiety;

12  emotional distress; loss of privacy; and other economic and non-economic losses.

13         85.    Defendant, as a California company, has thus violated Plaintiffs and

14  Class Members' right to privacy under the California constitution.

15  **<u>COUNT V</u>**

16  **Violation of Cal. Bus. and Prof. Code §§ 17200, *et seq.*;**

17  **California Unfair Competition Law**

18         86.    Plaintiffs repeat and reallege the allegations contained in each of the

19  paragraphs of this complaint as if fully set forth herein.

20         87.    By reason of the conduct alleged herein, and by failing to provide

21  reasonable security measures for the Sensitive Information of Plaintiffs and the

22  Class, Defendant violated the provisions of Cal. Bus. and Prof. Code §§ 17200, *et*

23  *seq.*

24         88.    As a result of Defendant's practices, Plaintiffs and the Class have

25  suffered a substantial injury-in-fact and have lost money or property. As a result of

26  Defendant's failure to adopt, implement, and maintain reasonable security

27  procedures, Plaintiffs and Class Members have incurred costs and spent time

28  associated with monitoring and repairing their credit. Further, Defendant's

1  practices have increased Plaintiffs and the Class' risk of being victims of identity

2  theft. Defendant's failure to notify Plaintiffs and the Class in a timely fashion that

3  their Sensitive Information was accessed by an unauthorized person has further

4  increased this identity theft risk.

5      89.    Plaintiffs and the Class have lost property in the form of their

6  Sensitive Information. California law recognizes similar forms of intangible items

7  to constitute property. Because property is the exclusive right to use or possess a

8  thing (or the exclusive ownership of that thing), property includes every intangible

9  benefit and prerogative susceptible of possession or disposition. Sensitive personal

10  information operates as a means of accessing financial accounts, and the means to

11  access financial accounts is an intangible benefit susceptible of possession. The

12  Sensitive Information Defendant has compromised here constitutes property

13  because it implies the right to use that Sensitive Information and the right to access

14  funds in certain financial accounts. Sensitive personal information is thus a

15  cognizable property interest.

16      90.    Defendant's violation of the laws of this state and of common law by

17  the practices complained of herein constitutes an unlawful business practice within

18  the meaning of Cal. Bus. and Prof. Code §§ 17200, *et seq.* Defendant's practices,

19  as described herein, violate federal, state, statutory, regulatory, or industry

20  standards, including:

21      a.    California Civil Code § 1798.81.5;

22      b.    California Civil Code § 1798.82;

23      c.    45 CFR 164.306(a)(1);

24      d.    45 CFR 164.312(a)(1);

25      e.    45 CFR 164.310(d)(1);

26      f.    45 CFR 164.308(a)(1);

27      g.    45 CFR 164.308(a)(6)(ii);

28      h.    45 CFR 164.306(a)(2);

1        i.     45 CFR 164.306(a)(3);

2        j.     45 CFR 164.306(a)(b)(4);

3        k.    45 CFR 164.502 *et seq*.;

4        l.     45 CFR 164.530(b);

5        m.   45CFR 164.308(a)(5);

6        n.     45 CFR164.530(c); and

7        o.     45 CFR 165.530(e).

8     91.    Defendant's actions also violate the "unfair" prong of section 17200 independent of the other causes of action asserted herein. Defendant's failure to adopt reasonable practices in protecting the Sensitive Information has resulted in Plaintiffs and the Class spending time and money to protect against identity theft. Defendant's failure to notify Plaintiffs and the Class in a timely fashion that their Sensitive Information was accessed by an unauthorized person has further increased the identity theft risk Plaintiffs and the Class now face. This harm sufficiently outweighs any of Defendant's justifications or motives for its practice of collecting and storing such information without taking adequate and reasonable measures to protect such information.

     92.    Defendant also misrepresented the nature of the breach. Specifically, Health Net, despite a report from Kroll, used terminology in public statements and in the Notice that implied the data was simply missing and that the data could not be accessed without specialized software. Defendant therefore omitted that Kroll had noted that theft was the likely cause and that the data could be viewed by common commercially available software. This omission implied to its enrollees that the breach was not a cause for concern resulting in lower redemption rates for the monitoring program offered by Health Net.

     93.    The conduct alleged herein is a "business practice" within the meaning of Cal. Bus. and Prof. Code §§ 17200 *et seq.*

94.    As a result of Defendant's actions, Plaintiffs and the Class are entitled to the following forms of injunctive relief by Defendant:

a.    Establishment, implementation, and maintenance of a comprehensive information security program designed to protect the security, confidentiality, and integrity of Sensitive Personal Information it collects from Health Net subscribers;

b.    Providing for identity theft protection services or some other reasonable method of protecting and securing the Sensitive Information of Plaintiffs and the Class;

c.    Encrypting any Sensitive Information collected from all Health Net at all times;

d.    Obtaining periodic reviews and/or audits from a qualified, independent, third-party professional to ensure that Health Net's security program, and its vendors, meets the standards set forth in (a) and engage in best industry practices with regard to applicant data in the future;

e.    Establishment of a fund to cover uninsured identity theft loss that Plaintiffs and the Class may incur as a result of the complained-of conduct; and

f.    Providing identity theft insurance and/or protection to Plaintiff and the Class for a period of five years and providing them online access and monitoring to the FICO scores of Plaintiffs and the Class.

## COUNT V

### Violation of Cal. Civ. Code § 1798.81.5, *et seq*.

95.    Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

96.    Health Net is a business that owns or licenses personal information about California residents as defined by Cal. Civ. Code §§ 1798.80 and 1798.81.5.

29

CLASS ACTION COMPLAINT

97. By failing to adopt, implement, and maintain reasonable security procedures and practices to protect the Sensitive Information of Plaintiffs and the Class from unauthorized disclosure, Defendant violated Cal. Civ. Code § 1798.81.5.

98. As a direct and proximate result of Defendants' violation of Cal. Civ. Code § 1798.81.5, Plaintiffs and the Class have been harmed since Defendant's compromising of their Sensitive Information has placed them at an increased risk of identity theft. Plaintiffs and Class members suffered and will continue to suffer actual damages including, but not limited to, expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; time spent initiating fraud alerts; anxiety; emotional distress; loss of privacy; and other economic and non-economic losses. Plaintiffs and Class members are thus entitled to damages as a result of the violation of Cal Civ. Code § 1798.81.5. Plaintiffs and the Class are also entitled to injunctive relief as described above in ¶ 94.

**COUNT VI**

**Violation of Cal. Civ. Code § 1798.82 (Notice Statute)**

99. Plaintiffs repeat and reallege the allegations contained in each of the paragraphs of this complaint as if fully set forth herein.

100. Health Net is an entity that conducts business in California and owns or licenses computerized data that includes personal information.

101. Plaintiff Gardner was a California resident on the date he enrolled in the Health Net Insurance Plan. Based on information and belief, many members of the Class also reside in California.

102. By failing to timely disclose to Plaintiffs and the Class that their unencrypted personal information was acquired by an unauthorized person, Defendant violated Cal. Civ. Code § 1798.82. Defendant failed to notify Plaintiffs and the Class of the data breach in the most expedient time possible and acted with

1   unreasonable delay in notifying Plaintiffs and the Class seven months after the data

2   breach took place.

3       103.   As a direct and proximate result of Defendant's violation of Cal. Civ.

4   Code § 1798.82, Plaintiffs and the Class have been harmed.  Defendant's failure to

5   promptly notify Plaintiffs and the Class that their Sensitive Information has

6   increased their risk of suffering identity theft.  Plaintiffs and Class members

7   suffered and will continue to suffer actual damages including, but not limited to,

8   expenses and/or time spent on credit monitoring and identity theft insurance; time

9   spent scrutinizing bank statements, credit card statements, and credit reports; time

10  spent initiating fraud alerts; anxiety; emotional distress; loss of privacy; and other

11  economic and non-economic losses.  Plaintiffs and Class members are thus entitled

12  to damages as a result of the violation of Cal Civ. Code § 1798.82.  Plaintiffs and

13  the Class are also entitled to injunctive relief as described above in ¶ 94.

14                          **PRAYER FOR RELIEF**

15      WHEREFORE, Plaintiffs individually and on behalf of all others similarly

16  situated, respectfully requests that the Court enter an Order:

17      a. Certifying the proposed Class under Fed. R. Civ. P. 23 and appointing

18  Plaintiffs and Plaintiffs' counsel to represent the Class;

19      b. Finding that Defendant is liable under all legal claims asserted herein for

20  its failure to safeguard Plaintiffs' and Class members' Sensitive Information;

21      c. Enjoining Defendant from actions which place Class members at a risk of

22  future security breaches;

23      d. Awarding injunctive relief as detailed in ¶ 94;

24      e. Awarding compensation to Plaintiffs and the Class as a result of the

25  unauthorized access to their Sensitive Information;

26      f. Awarding damages to Plaintiffs and the Class under the theories alleged

27  herein;

28      g. Awarding punitive and/or treble damages as provided under relevant laws;

31

1     h. Awarding all costs, including attorneys' fees, and the costs of prosecuting

2  this action;

3     i. Awarding pre and post judgment interest as prescribed by law; and

4     j. Awarding any other legal or equitable relief as justice requires.

5       **<u>JURY TRIAL DEMANDED</u>**

6     Plaintiffs hereby demand a trial by jury on all issues so triable.

7

8  Dated: March 24, 2010       Respectfully submitted,

9       **FINKELSTEIN THOMPSON LLP**

10

11

12       Rosemary M. Rivas

13       Mark Punzalan
         100 Bush St., Suite 1450

14       San Francisco, California 94104
         Telephone: (415) 398-8700

15       Facsimile: (415) 398-8704

16

17  *Of Counsel*

18  Jamie L. Sheller

19  **SHELLER, P.C.**
    1528 Walnut Street, 3rd Floor

20  Philadelphia, PA 19102
    Tel: (215) 790-7300

21  Fax: (215) 546-0942

22

23  Mila F. Bartos

24  Tracy D. Rezvani
    **FINKELSTEIN THOMPSON LLP**

25  The Duval Foundry
    1050 30th Street, NW

26  Washington, D.C. 20007

27  Telephone: (202) 337-8000
    Facsimile: (202) 337-8090

28

CLASS ACTION COMPLAINT

# EXHIBIT 1





**Register for Free Identity Protection**

Activation Code:   120673389

Enroll Online: www.debix.com/healthnet

Assistance Hotline: (877) 263-8001

November 30, 2009

4730 5105 893893 ˣˣˣˣˣˣAUTO**5-DIGIT 85224
Kenneth Gardner

**REDACTED**

Dear Kenneth Gardner,

Protecting the privacy of our members' personal information is a critical priority at Health Net, Inc. The purpose of this letter is to inform you of a matter involving an unencrypted portable computer disk drive that was discovered missing from a Health Net office. The information on the disk drive is in the form of scanned images rather than raw data and covers the period from 2002 to mid-2009. Because of the nature of the files saved on this portable computer disk drive, we were initially unable to determine what information was on the disk drive. The investigation to make this determination was very lengthy and required a detailed forensic review by computer experts. However, we have now been able to determine that the disk drive contained your personal information such as your name, address, Social Security number and possibly your protected health and financial information.

Fortunately, the files on the missing drive were not saved in a format that can be easily accessible and therefore, we believe the risk of harm to you is low. Additionally, to date, the investigation has not found any evidence that any of the data contained on the disk drive has been misused. Nevertheless, we want to make you aware of the incident and the steps we are taking on your behalf to ensure you are as protected as possible.

To ensure the integrity of your personal information, Health Net has arranged for you to receive <u>identity protection</u> under the Debix Identity Protection Network, for two years <u>at no cost to you</u>. Once you register, Debix will enroll you in their OnCall Credit Monitoring, and you will receive OnCall Credit Alerts regarding changes to your credit file. If the individual who has received this letter is under the age of eighteen, Health Net has arranged for them to receive credit protection services with Debix ChildScan. Using your phone, you can review and verify these Credit Alerts and the Debix OnCall Investigators are available to assist you in the event that you suspect any fraud relating to your personal accounts. The identity protection services also include $1,000,000 of identity theft insurance coverage and enrollment in Debix Fraud Resolution Services for two years, if needed, to assist you in restoring your credit file. Additionally, if you experienced any identity theft between May 14, 2009 and the date of this letter, Health Net has also arranged for Debix Fraud Resolution Services to restore your identity at no cost to you.

Debix has a simple internet-based verification and enrollment process. To enroll, visit www.debix.com/healthnet. You will need to provide the activation code listed at the top of this page. Once you have entered your activation code, click on "Sign Up Now" on the right side of the page and follow the website's instructions. Please note, if you enroll online, part of the enrollment process may include receiving a phone call from Debix soon after you initiate the registration process. If you prefer to register through the mail, please complete the enclosed mail-in registration form.

Case 3:09-cv-02826-PJH Document 24-16 06/10/09 Page 12 of 12

Should you choose not to enroll for the free Debix Identity Protection services, we urge you to continue to check your credit report periodically to ensure fraudulent activity has not occurred. Even if you do not find any signs of fraud on your reports, we recommend that you remain vigilant and check your credit report every three months for the next year.

You may also want to contact the three credit bureaus included in the "State Specific Notification Requirements" attachment to discuss placing a fraud alert on your credit report. The credit bureaus are Equifax, Experian and TransUnion. Additionally, Health Net has arranged for you to be reimbursed for any fees associated with applying or thawing a credit freeze for a two year period. To learn more, please contact Debix at (877) 263-8001.

We also recommend that you regularly review the explanation of benefit statements you receive from Health Net as claims are submitted. If you see any service that you believe you did not receive, please contact Health Net at the number on the statement. You may want to order copies of your credit reports and check for any medical bills that you do not recognize. If you find anything suspicious, call the credit reporting agency at the phone number on the report. You can order your one free credit report per year by calling (877) 322-8228 or visit www.annualcreditreport.com.

Health Net is diligent about ensuring the safety of our members' information. We are vigorously monitoring this matter to ensure the ongoing security of your private information and have implemented additional information security procedures. We sincerely regret any inconvenience or concern this event may cause you. In the meantime, we urge you to take advantage of the services available to you.

If you are interested in receiving identity protection services under the Debix Identity Protection Network, you must enroll in this service within 120 days from the date of this letter and the service will be valid for two years from your enrollment date. If you have any questions or feel that you have an identity theft issue, please contact our representatives at (877) 263-8001 between 9:00 a.m. and 5:00 p.m., CST, Monday through Saturday. You may also find answers to your questions online at www.debix.com/healthnet.

Sincerely,

Lisa King

Lisa King
Director, Information Privacy
Health Net, Inc.

 Health Net®

 DEBIX
The Identity Protection Network

**Register for Free Identity Protection**

Activation Code:  124260514

Enroll Online: www.debix.com/healthnet

Assistance Hotline: (877) 263-8001

November 30, 2009

 5712 6263 1072722 ******AUTO**MIXED AADC 300
Alice Brandt

**REDACTED**

lllllllllllllllllllllllllllllllllllllllllll

Dear Alice Brandt,

Protecting the privacy of our members' personal information is a critical priority at Health Net, Inc. The purpose of this letter is to inform you of a matter involving an unencrypted portable computer disk drive that was discovered missing from a Health Net office. The information on the disk drive is in the form of scanned images rather than raw data and covers the period from 2002 to mid-2009. Because of the nature of the files saved on this portable computer disk drive, we were initially unable to determine what information was on the disk drive. The investigation to make this determination was very lengthy and required a detailed forensic review by computer experts. However, we have now been able to determine that the disk drive contained your personal information such as your name, address, Social Security number and possibly your protected health and financial information.

Fortunately, the files on the missing drive were not saved in a format that can be easily accessible and therefore, we believe the risk of harm to you is low. Additionally, to date, the investigation has not found any evidence that any of the data contained on the disk drive has been misused. Nevertheless, we want to make you aware of the incident and the steps we are taking on your behalf to ensure you are as protected as possible.

To ensure the integrity of your personal information, Health Net has arranged for you to receive <u>identity protection</u> under the Debix Identity Protection Network, for two years <u>at no cost to you</u>. Once you register, Debix will enroll you in their OnCall Credit Monitoring, and you will receive OnCall Credit Alerts regarding changes to your credit file. If the individual who has received this letter is under the age of eighteen, Health Net has arranged for them to receive credit protection services with Debix ChildScan. Using your phone, you can review and verify these Credit Alerts and the Debix OnCall Investigators are available to assist you in the event that you suspect any fraud relating to your personal accounts. The identity protection services also include $1,000,000 of identity theft insurance coverage and enrollment in Debix Fraud Resolution Services for two years, if needed, to assist you in restoring your credit file. Additionally, if you experienced any identity theft between May 14, 2009 and the date of this letter, Health Net has also arranged for Debix Fraud Resolution Services to restore your identity at no cost to you.

Debix has a simple internet-based verification and enrollment process. To enroll, visit www.debix.com/healthnet. You will need to provide the activation code listed at the top of this page. Once you have entered your activation code, click on "Sign Up Now" on the right side of the page and follow the website's instructions. Please note, if you enroll online, part of the enrollment process may include receiving a phone call from Debix soon after you initiate the registration process. If you prefer to register through the mail, please complete the enclosed mail-in registration form.

# State Specific Notification Requirements

**For residents of Hawaii, Iowa, Maryland, Michigan, Missouri, North Carolina, Oregon, Vermont, Virginia, West Virginia, or Wyoming:**

It is required by your state laws to inform you that you may obtain a copy of your credit report, free of charge, whether or not you suspect any unauthorized activity on your account. It is recommended by state law that you remain vigilant for incidents of fraud and identity theft by reviewing credit card account statements and monitoring your credit report for unauthorized activity. You may obtain a free copy of your credit report by contacting any one or more of the following national consumer reporting agencies:

**Equifax**
P.O. Box 740241
Atlanta, Georgia 30348
1-800-685-1111
www.equifax.com

**Experian**
P.O. Box 2104
Allen, TX 75013
1-888-397-3742
www.experian.com

**TransUnion**
P.O. Box 6790
Fullerton, CA 92834-6790
1-877-322-8228
www.transunion.com

**For residents of Iowa:**
State law advises you to report any suspected identity theft to law enforcement or to the Attorney General.

**For residents of Oregon:**
State law advises you to report any suspected identity theft to law enforcement, as well as the Federal Trade Commission.

**For residents of Maryland:**
You can obtain information from the Maryland Office of the Attorney General and the Federal Trade Commission about steps you can take to avoid identity theft.

**Maryland Office of the Attorney General**
Consumer Protection Division
200 St. Paul Place
Baltimore, MD 21202
1-888-743-0023
www.oag.state.md.us

**Federal Trade Commission**
Consumer Response Center
600 Pennsylvania Avenue, NW
Washington, DC 20580
1-877-IDTHEFT (438-4338)
www.ftc.gov/bcp/edu/microsites/idtheft/

**For residents of Massachusetts or West Virginia:**
It is required by your state laws that you are informed of your right to obtain a police report if you are a victim of identity theft. You also have the right to place a security freeze on your credit report. A security freeze is intended to prevent credit, loans and services from being approved in your name without your consent; however, using a security freeze may delay your ability to obtain credit.

To place a security freeze on your credit report, you need to send a request to a consumer reporting agency by certified mail, overnight mail, or regular stamped mail. The following information must be included when requesting a security freeze (note that if you are requesting a credit report for your spouse, this information must be provided for him/her as well): (1) full name, with middle initial and any suffixes; (2) Social Security number; (3) date of birth; (4) current address and any previous addresses for the past five years; and (5) any applicable incident report or complaint with a law enforcement agency or the Registry of Motor Vehicles. The request must also include a copy of a government-issued identification card and a copy of a recent utility bill or bank or insurance statement. It is essential that each copy be legible, display your name and current mailing address, and the date of issue. The consumer reporting agency may charge a fee of up to $5.00 to place a freeze or lift or remove a freeze, unless you are a victim of identity theft or the spouse of a victim of identity theft, and you have submitted a valid police report relating to the identity theft incident to the consumer reporting agency.

**Equifax**
P.O. Box 740241
Atlanta, Georgia 30348
1-800-685-1111
www.equifax.com

**Experian**
P.O. Box 2104
Allen, TX 75013
1-888-397-3742
www.experian.com

**TransUnion**
P.O. Box 6790
Fullerton, CA 92834-6790
1-877-322-8228
www.transunion.com

Should you choose not to enroll for the free Debix Identity Protection service, you should continue to check your credit report periodically to ensure fraudulent activity has not occurred. Even if you do not find any signs of fraud on your reports, we recommend that you remain vigilant and check your credit report every three months for the next year.

You may also want to contact the three credit bureaus included in the "State Specific Notification Requirements" attachment to discuss placing a fraud alert on your credit report. The credit bureaus are Equifax, Experian and TransUnion. Additionally, Health Net has arranged for you to be reimbursed for any fees associated with applying or thawing a credit freeze for a two year period. To learn more, please contact Debix at (877) 263-8001.

We also recommend that you regularly review the explanation of benefit statements you receive from Health Net as claims are submitted. If you see any service that you believe you did not receive, please contact Health Net at the number on the statement. You may want to order copies of your credit reports and check for any medical bills that you do not recognize. If you find anything suspicious, call the credit reporting agency at the phone number on the report. You can order your one free credit report per year by calling (877) 322-8228 or visit www.annualcreditreport.com.

Health Net is diligent about ensuring the safety of our members' information. We are vigorously monitoring this matter to ensure the ongoing security of your private information and have implemented additional information security procedures. We sincerely regret any inconvenience or concern this event may cause you. In the meantime, we urge you to take advantage of the services available to you.

If you are interested in receiving identity protection services under the Debix Identity Protection Network, you must enroll in this service within 120 days from the date of this letter and the service will be valid for two years from your enrollment date. If you have any questions or feel that you have an identity theft issue, please contact our representatives at (877) 263-8001 between 9:00 a.m. and 5:00 p.m., CST, Monday through Saturday. You may also find answers to your questions online at www.debix.com/healthnet.

Sincerely,

Lisa King

Lisa King
Director, Information Privacy
Health Net, Inc.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Percy Anderson and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV10- 2140 PA (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)        NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

ORIGINAL

Rosemary M. Rivas (State Bar No. 209147)
Mark Punzalan (State Bar No. 247599)
FINKELSTEIN THOMPSON LLP
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700

 FAXED

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| KENNETH MARTIN GARDNER and ALICE BRANDT, on behalf of themselves and all others similarly situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV10-02140** Pt/(cwx) |
| v. | |
| HEALTH NET, INC. | **SUMMONS** |
| DEFENDANT(S). | |

TO:   DEFENDANT(S): HEALTH NET, INC.

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Mark Punzalan_____, whose address is _Finkelstein Thompson LLP, 100 Bush Street, Suite 1450, CA 94104_____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Dated: __3/24/2010__

Clerk, U.S. District Court

By: _____

Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                                      SUMMONS

FAXED

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
Kenneth Martin Gardner
Alice Brandt

**DEFENDANTS**
Health Net, Inc.

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Rosemary M. Rivas; Mark Punzalan
Finkelstein Thompson LLP, 100 Bush Street, Suite 1450, CA 94104
Tel: (415) 398-8700

**Attorneys (If Known)**

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding     ☐ 2 Removed from State Court     ☐ 3 Remanded from Appellate Court     ☐ 4 Reinstated or Reopened     ☐ 5 Transferred from another district (specify):     ☐ 6 Multi-District Litigation     ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:     JURY DEMAND:** ☑ Yes  ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☑ Yes  ☐ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 USC 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☑ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determination Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:**     Case Number: **CV10-02140**

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                           CIVIL COVER SHEET                           Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Arizona<br>Alabama |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
    **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____     Date 3/24/2010

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |