UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

| Present: The Honorable | PERCY ANDERSON, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Paul Songco | Leandra Amber | N/A |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Mark Punzalan | Karin Kim |
| | Michael Maddigan |

**Proceedings:**    **MOTION TO DISMISS PLAINTIFF'S FOURTH AMENDED COMPLAINT (DOCKET NO. 82)**

    Before the Court is a Motion to Dismiss Plaintiffs' Fourth Amended Class Action Complaint (Docket No. 82), filed by defendant Health Net, Inc. ("Defendant"). A hearing was held on November 29, 2010, during which the Court heard oral argument from the parties. After considering the parties' papers as well as the oral argument of counsel, the Court grants in part and denies in part the Motion to Dismiss.

**I.    Background**

    On May 14, 2009, Defendant Health Net, Inc. ("Defendant") learned that an unencrypted portable disk drive had been stolen from its offices in Shelton, Connecticut. The disk drive contained personal information, including Social Security numbers and bank account information, for approximately 1.5 million Health Net enrollees, including Plaintiffs. Plaintiffs allege that Defendant did not inform the Attorney General's office of the theft until November 19, 2009. Defendant also waited until November 30, 2009 to inform its enrollees of the missing disk drive. When Defendant notified its enrollees of the missing disk drive, it offered them: (1) two years of credit-monitoring services; (2) $1 million of identity theft insurance coverage; (3) enrollment in fraud resolution services for two years; and (4) identity restoration services for any identity theft experienced between May 14, 2009 and November 30, 2009.

    Plaintiffs Kenneth Martin Gardner and Alice Brandt ("Plaintiffs") allege that the two years of credit-monitoring services offered by Defendant are not sufficient, and that Defendant failed to properly and timely notify Plaintiffs and government authorities regarding the missing disk drive. Additionally, Plaintiffs allege that Defendant did not take appropriate measures to ensure the security of their enrollees' personal information.

    On March 24, 2010, Plaintiffs filed this action, claiming that they suffer an increased risk of fraud resulting from the theft of the disk drive. On July 13, 2010, Defendant moved to dismiss the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

Second Amended Complaint in its entirety, contending that Plaintiffs did not have the necessary standing to bring their claims and that Plaintiffs failed to state a claim for relief.  The Court granted Defendant's motion to dismiss with regard to all of Plaintiffs' claims, with leave to amend.  After filing a Third Amended Complaint in response to the Court's order granting Defendant's motion to dismiss, Plaintiffs requested leave to file a Fourth Amended Complaint ("4AC").  On October 4, 2010, the Court granted Plaintiffs leave to file a Fourth Amended Complaint.  The Fourth Amended Complaint alleges claims for negligence, breach of contract, violation of California Unfair Competition Law, and violation of the Confidentiality of Medical Information Act.  Now, Defendant moves to dismiss all the claims in the Fourth Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).

**II.     Motion to Dismiss Standard**

Generally, plaintiffs in federal court are required to give only "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a).  While the Federal Rules allow a court to dismiss a cause of action for "failure to state a claim upon which relief can be granted," they also require all pleadings to be "construed so as to do justice."  Fed. R. Civ. P. 12(b)(6), 8(e).  The purpose of Rule 8(a)(2) is to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 103, 2 L. Ed. 2d 80 (1957)).

The Ninth Circuit is particularly hostile to motions to dismiss under Rule 12(b)(6).  See, e.g., Gilligan v. Jamco Dev. Corp. , 108 F.3d 246, 248–49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful presumption against rejecting pleadings for failure to state a claim.") (internal quotation omitted).  However, in Twombly, the Supreme Court rejected the notion that "a wholly conclusory statement of a claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some set of undisclosed facts to support recovery."  Twombly, 550 U.S. at 561, 127 S. Ct. at 1968, 167 L. Ed. 2d 929 (internal quotation omitted).  Instead, the Court adopted a "plausibility standard," in which the complaint must "raise a reasonable expectation that discovery will reveal evidence of [the alleged infraction]."  Id. at 556, Id. at 1965, 167 L. Ed. 2d 929.  For a complaint to meet this standard, the "[f]actual allegations must be enough to raise a right to relief above the speculative level . . ."  Id. (citing 5 C. Wright Miller, Federal Practice and Procedure §1216, pp. 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")); Daniel v. County of Santa Barbara, 288 F.3d 375, 380 (9th Cir. 2002) ("'All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.'") (quoting Burgert v. Lokelani Bernice Pauahi Bishop Trust, 200 F.3d 661, 663 (9th Cir. 2000)).  Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1964–65, 167 L. Ed. 2d 929 (internal quotations omitted).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)(quoting Twombly, 550

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

U.S. at 570, 127 S. Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

### III. Analysis

#### A. Plaintiffs' Claim for Negligence

The elements of a negligence cause of action under California law are: (1) the existence of a duty to exercise due care, (2) breach of that duty, (3) causation, and (4) damages. Paz v. California, 22 Cal. 4th 550, 559 (2001). Appreciable, nonspeculative, present harm is an essential element of a negligence cause of action. Aas v. Super. Ct., 24 Cal. 4th 627, 646 (2000). Accordingly, the breach of a duty causing only speculative harm or the threat of future harm is generally insufficient. See Jordache Enters., Inc. v. Brobeck, Phleger & Harrison et al., 18 Cal. 4th 739 (1998) ("[N]ominal damages, speculative harm, and the mere threat of future harm are not actual injury."); Adams v. Paul, 11 Cal. 4th 583 (1995) (same).

Here, Defendant does not seem to dispute whether Plaintiffs have sufficiently alleged the existence of a duty and breach of that duty. However, Defendant argues that Plaintiffs have not properly alleged causation and damages.

"California courts have not considered whether time and money spent on credit monitoring as the result of the theft of personal information are damages sufficient to support a negligence claim." Ruiz v. Gap, Inc., 2010 U.S. App. LEXIS 10984 at *4 (9th Cir. May 28, 2010) (declining to reach issue of whether theft of personal information constitutes cognizable damages under California law). However, Plaintiffs contend that lost data cases are analogous to medical monitoring cases, in which plaintiffs who have been exposed to toxic substances are permitted to recover for future medical monitoring. When the relevant factors in medical monitoring cases are applied to identity theft cases, the availability of damages for the cost of credit monitoring requires allegations of: "(1) significant exposure of sensitive personal information; (2) a significantly increased risk of identity fraud as a result of that exposure; and (3) the necessity and effectiveness of credit monitoring in detecting, treating, and/or preventing identity fraud." See Stollenwerk v. Tri-West Healthcare Alliance, 2005 U.S. Dist. LEXIS 41054 at *13 (D. Ariz., September 8, 2005).

Here, both Plaintiffs contend that they have suffered damages in the form of "expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts." (4AC at ¶ 84.) Notably, Plaintiff Gardner does not allege that he experienced any identity theft as a result of the missing disk drive. Rather, Gardner merely alleges that he "now faces a significantly greater risk of identity theft." (4AC at ¶ 39.) This allegation, in itself, is insufficient to support a negligence claim, even under the standard used in medical monitoring cases. As the Court noted in its previous order

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

dismissing the Second Amended Complaint, Plaintiff Gardner has not alleged any significant exposure of his information. Now, although Plaintiffs contend that the Fourth Amended Complaint alleges significant exposure and an increased risk of identity fraud as the result of this exposure, these new allegations only apply to Plaintiff Brandt, not Plaintiff Gardner. (Opp. at 13; 4AC at ¶¶ 50-59.) There are no allegations in the Fourth Amended Complaint from which the Court may reasonably infer that Gardner's confidential information, in particular, was actually exposed. Without any such allegations, Plaintiff Gardner cannot state a claim for negligence, even under the standard set forth in medical monitoring cases. Accordingly, Plaintiff Gardner's negligence claim is dismissed with prejudice.

In contrast, Plaintiff Brandt alleges that she actually suffered identity theft after the disk drive was taken from Defendant's offices. Specifically, Plaintiff Brandt alleges that: she had never been a victim of identity theft before June 2009; she took "extraordinary precautions to protect herself from identity theft"; she "never made any purchase online with a credit card, has never transmitted [s]ensitive financial [i]nformation on the Internet, and has never stored her Sensitive Information on a computer or media device." (4AC at ¶ 54.) Accepting these allegations as true, and drawing all reasonable inferences in favor of Plaintiffs, Brandt has sufficiently alleged a claim for negligence under the standard set forth in medical monitoring cases. Because it may be reasonably inferred from these allegations that Plaintiff Brandt suffered from identity theft as the result of the theft of the disk drive from Defendant's offices, it may also be reasonably inferred that Brandt's information was significantly exposed. Also, the Fourth Amended Complaint alleges a significantly increased risk of identity fraud as a result of the exposure of Brandt's information (4AC at ¶ 53), and generally alleges the necessity and effectiveness of credit monitoring in preventing further identity fraud (4AC at ¶ 26, 61.) As such, Plaintiff Brandt alleges all of the relevant factors set forth in Stollenwerk for the recovery of credit monitoring costs.

Although Defendant argues that the economic loss doctrine should apply to bar Plaintiffs' negligence claim entirely, Defendant has not offered any authority to show that California courts would apply that doctrine here. Under the economic loss doctrine, liability is limited to damages for physical injury, and the recovery of economic loss is not allowed in actions for negligence. Aas v. Superior Court, 24 Cal. 4th 627, 636 (2000). However, exceptions to the rule exist where there is a "special relationship" between the parties. J'Aire Corp. v. Gregory, 24 Cal. 3d 799, 804 (1979). Whether a "special relationship" exists is determined by six criteria: "(1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct and (6) the policy of preventing future harm." Id.

Here, it appears that a special relationship exists between the parties that would preclude application of the economic loss doctrine. First, the alleged relationship between the parties, whereby Plaintiffs paid Defendant for health insurance and the protection of their confidential information, was intended to affect Plaintiffs directly. Second, it was foreseeable that harm to Plaintiffs might result upon

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

the breach of this alleged duty to maintain the confidentiality of Plaintiffs' information.  Third, the degree of certainty that Plaintiffs would suffer injury was high, given the nature of the information that was stolen.  Fourth, the closeness of the connection between the Defendant's conduct and Plaintiff Brandt's injury is high, given that Plaintiff Brandt allegedly engaged in numerous measures to ensure the security of her personal information before the theft of the disk drive.  Fifth, the moral blame attached to Defendant's conduct is high, given Plaintiffs' allegations that Defendant failed to take the appropriate measures to protect Plaintiffs' information.  Finally, the policy of preventing future harm supports the availability of damages here, given the prevalence of identity theft and the need to protect consumers' confidential information.[1/]

     **B.**     **Plaintiffs' Claim for Breach of Contract**

In order to sufficiently allege a breach of express contract, a plaintiff must allege: the existence of the contract, performance by the plaintiff or excuse for nonperformance, breach by the defendant and damages.  First Commercial Mortgage Co. v. Reece, 89 Cal.App.4th 731, 745 (2001).  The essential elements of a contract include: (1) parties capable of contracting; (2) their consent; (3) a lawful object; (4) a sufficient cause or consideration.  Cal. Civ. Code § 1550.

In the Fourth Amended Complaint, Plaintiffs allege that they "paid money to Health Net in exchange for health care coverage and its promises to protect their health information and Sensitive Information."  (4AC at ¶ 86.)  Plaintiffs also allege that Defendant "expressly promised Plaintiffs and Class members [in a written services contract] that they only disclose health information when required to do so by federal or state law."  (4AC at ¶ 87.)  Defendant allegedly breached these contracts by failing to safeguard Plaintiffs' information.  (4AC at ¶ 90.)  Plaintiffs allege that they have suffered damages including "the release of their Sensitive Information; expenses and/or time spent on credit monitoring

---

     [1/] Defendant's reliance on Sovereign Bank v. BJ's Wholesale Club, Inc., 533 F.3d 162 (3d Cir. 2008), is inapposite.  Sovereign Bank involved a suit by a credit card issuer against a retailer for the negligent storage of credit card information, which facilitated the theft of that information from the retailer's computer files.  533 F.3d at 166.  Through a claim for negligence, the credit card issuer sought to recover the costs associated with the replacement of some of its customers' credit cards, as well as the amounts it paid to reimburse customers whose credit card data was used for fraudulent purchases.  Id. at 176.  The Third Circuit, applying Pennsylvania law, concluded that the claim was barred by the economic loss doctrine.  Id. at 178.

     This case is distinguishable from Sovereign Bank insofar as California law applies here.  "Among the states that have adopted the economic loss rule, the doctrine's scope varies widely."  Clearone Communications, Inc. v. JAS Forwarding, 2009 U.S. Dist. LEXIS 93545 at *7 (D. Utah October 7, 2009) (comparing application of economic loss doctrine in different states).  Thus, given the varied application of the economic loss rule from state to state, the Court does not find the Third Circuit's application of Pennsylvania law to be persuasive in this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts." (4AC at ¶ 95.) In addition, Plaintiffs allege that they have suffered "anxiety; emotional distress; loss of privacy; and other economic and non-economic losses." (4AC at ¶ 95.)

Defendant argues that the Privacy Policy cannot form a basis for Plaintiffs' breach of contract claim because the Court previously found that Plaintiffs had not set forth any allegations to establish that Defendant's Privacy Policy was anything more than a unilateral statement of company policy. While it still remains unclear whether the Privacy Policy in itself is sufficient to support a breach of contract claim, Plaintiffs' allegations in the Fourth Amended Complaint are not based solely upon the statements made in the Privacy Policy. Rather, Plaintiffs seem to allege that the parties had an agreement under which Plaintiffs were required to pay money in exchange for Defendant's promises to protect their information, and a written services contract which promised not to disclose Plaintiffs' health information except as required by law. The Privacy Policy is only alleged to be a part of the latter. As such, the Court finds that Plaintiffs have sufficiently set forth a contract from which they may assert a claim for breach of contract.

With regard to damages, however, the Court finds that Plaintiff Gardner has failed to allege any cognizable damages that would support a breach of contract claim. As the Court noted in its previous order, "[a]n essential element of a claim for breach of contract are damages resulting from the breach." See St. Paul Fire & Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co., 101 Cal. App. 4th 1038, 1060 (2002) (emphasis omitted). Such damages are generally measured by "the amount which will compensate [the injured party] for all the detriment proximately caused by the breach, or which, in the ordinary course of things, would be likely to result from the breach." Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal. App. 3d 442, 468 (1990) (internal citations omitted).

Here, Plaintiffs contend that they have sufficiently alleged damages because they allege that they "failed to receive the benefit of their bargain in the contract." (Opp. at 24.) In asserting this argument, Plaintiffs rely on Ramkissoon v. AOL LLC, 2010 U.S. Dist. LEXIS 68859 (N.D. Cal. June 23, 2010), in which three plaintiffs brought a putative class action against AOL for public disclosure of their confidential information. In Ramkissoon, the court noted that AOL had assured its members that its service was "safe, secure and private." 2010 U.S. Dist. LEXIS 68859 at *21. Accordingly, the court concluded, the plaintiffs had sufficiently alleged injury from the disclosure of their information because it was "not something that members bargained for when they signed up and paid fees for AOL's service." Id. at *22. Notably, however, Ramkissoon did not address whether such injury was sufficient to support a claim for breach of contract. Rather, the plaintiffs in Ramkissoon brought a claim against AOL for violation of the California Consumers Legal Remedies Act ("CLRA"). Indeed, the Ramkissoon court specifically noted that "California courts have recognized that 'damage' in CLRA parlance is not synonymous with 'actual damages.'" Id. at * 20. Thus, given this clear distinction between "damage" under the CLRA and "actual damages," as required for a breach of contract claim, Plaintiffs' argument regarding receipt of the "benefit of their bargain" is misplaced.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

Additionally, as the Court stated in its previous order dismissing the Second Amended Complaint, an individual who has not actually suffered from identity theft, but only alleges an increased risk of identity theft, cannot establish any appreciable and actual damage that would support a claim for breach of contract. See Ruiz v. Gap, Inc., 622 F. Supp. 2d 908, 917 (N.D. Cal. 2009), aff'd, 2010 U.S. App. LEXIS 10984 (9th Cir. May 28, 2010). Here, the Fourth Amended Complaint sets forth the same allegations as the Second Amended Complaint with regard to Plaintiff Gardner's damages for the alleged breach of contract. As before, Plaintiff Gardner alleges that he has suffered damages in the form of "expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; and time spent initiating fraud alerts." (4AC at ¶ 95.) The Fourth Amended Complaint merely adds that Plaintiff Gardner has suffered damages including "the release of his Sensitive Information." Id. This allegation is insufficient to support a claim for breach of contract. Accordingly, because Plaintiff Gardner still cannot allege that he suffers from anything greater than an increased risk of identity theft, his breach of contract claim is dismissed with prejudice.

With regard to Plaintiff Brandt, the Court finds that the Fourth Amended Complaint sufficiently alleges damages sufficient to support a breach of contract claim. Unlike Plaintiff Gardner, Plaintiff Brandt alleges that she actually suffered identity theft insofar as she received fraudulent charges on her Citibank credit account. (4AC at ¶ 43.) In addition, Plaintiff Brandt alleges that she has spent "approximately $700 . . . to get fraudulent charges removed from her credit as a result of the data breach." (4AC at ¶ 48.) The Court previously found that Plaintiff Brandt had not sufficiently alleged damages for breach of contract because she failed to set forth any allegations that would establish that her "damages" were actually caused by Defendant's actions in breaching the parties' contract. However, as discussed above, Brandt has now set forth allegations that raise the reasonable inference that the identity theft she experienced was the result of the theft of the disk drive.

        **C.**        **Claim for Violation of Business and Professions Code Section 17200, et seq.**

Business and Professions Code section 17200 et seq., is referred to as California's "unfair competition statute" ("UCL") and prohibits "any unlawful, unfair or fraudulent business act or practice." In re Pomona Valley Med. Group, Inc., 476 F.3d 665, 674 (9th Cir. 2007). Despite its name, the UCL is not confined to anti-competitive business practices, but is equally directed toward "the right of the public to protection from fraud and deceit." Committee on Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 209-210 (1983). The UCL authorizes injunctive and restitutionary relief against "any person who engages . . . in unfair competition." Cal. Bus. & Prof. Code § 17203.

"[T]o pursue either an individual or a representative claim under the California unfair competition law," a plaintiff "must have suffered an 'injury in fact' and have 'lost money or property as a result of such unfair competition.'" Hall v. Time Inc., 158 Cal. App. 4th 847, 849 (2008). "An injury in fact is '[a]n actual or imminent invasion of a legally protected interest, in contrast to an invasion that is conjectural or hypothetical.'" Id. at 853. Under California law, to claim a loss of money or property

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

for restitution purposes, a plaintiff must have either prior possession or a vested legal interest in the money or property lost.  Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003).

In their Second Amended Complaint, Plaintiffs alleged injury in the form of an increased risk of identity theft and costs and time spent monitoring and repairing their credit.  Plaintiffs also alleged lost property in the form of their sensitive information.  The Court found that these allegations were insufficient to establish standing to assert a UCL claim, given that such a loss of time and expenditures have not been recognized as "the kind of loss of money or property necessary for standing to assert a claim under section 17200."  Ruiz v. Gap, Inc., 2009 U.S. Dist. LEXIS 10400 at *10 (N.D. Cal. February 3, 2009).  Now, however, Plaintiff Gardner alleges an injury in fact based on Defendant's failure to provide the entirety of the represented benefit when he agreed to purchase health coverage from Defendant, and Plaintiff Brandt alleges an injury in fact based on the $4,000 of fraudulent charges incurred on her Citibank account after her identity was allegedly stolen.

Where a plaintiff has only received some, but not all of a represented benefit, courts have held that this constitutes an injury in fact sufficient to confer standing to bring a UCL claim.  See, e.g., Daghlian v. DeVry Univ., Inc., 461 F. Supp. 2d 1121, 1156 (C.D. Cal. 2006); Laster v. T-Mobile United States, Inc., 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005).  However, the plaintiff must also allege that "the defendant's misrepresentations were an immediate cause of the injury-causing conduct."  In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009).

Here, Plaintiff Gardner alleges that he "reviewed and relied on Defendant's Privacy Policy in purchasing health coverage from Defendant," and would not have purchased health coverage from Defendant if he had known that Defendant "did not have proper policies and procedures in place for protecting Sensitive Information."  (4AC at ¶ 103.)  These allegations establish that Plaintiff Gardner relied on Defendant's alleged representations regarding its policies and procedures for securing Plaintiffs' information.  In addition, these allegations establish that Plaintiff Gardner failed to receive all of the benefit that Defendant represented to him.  Accordingly, the Court finds that Plaintiff Gardner has sufficiently alleged standing to assert a UCL claim against Defendant.

Plaintiff Brandt alleges in the Fourth Amended Complaint that she suffered an injury in fact insofar as she "incurred fraudulent charges totaling approximately $4,000."  (4AC at ¶ 104.)  Defendant contends that these charges cannot constitute an injury in fact because they were ultimately removed from her account.  The Court disagrees.

In Rubio v. Capital One Bank, 613 F.3d 1195, (9th Cir. 2010), the Ninth Circuit concluded that a plaintiff has standing to assert a UCL claim where she alleges a loss of credit due to the defendant's actions.  In Rubio, the plaintiff sued a credit card company because the "fixed" annual percentage rate that the defendant advertised more than doubled, despite the absence of any triggering condition that would justify such an increase.  613 F.3d at 1198.  Although the plaintiff did not allege whether she ultimately closed the account or kept it open, the court concluded that either option would have resulted

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

in a loss of money or property constituting an injury in fact. Id. at 1204. If the plaintiff had closed the account, she would have suffered a loss of money. Id. Likewise, keeping the account open and paying the higher percentage rate also would have resulted in a loss of money. Id. Thus, the Ninth Circuit found that this "actual economic injury" was sufficient to create UCL standing. Id. Once standing is established, it is not extinguished by the inability to prove the right to restitution of such monies. Clayworth v. Pfizer, Inc., 49 Cal. 4th 758, 789 (2010).

Here, Plaintiff Brandt alleges that she suffered a loss of credit in the amount of $4,000 as the result of fraudulent charges made on her Citibank account. In addition, Plaintiff Brandt alleges that the fraudulent charges "forced her to close the [] account to prevent further fraudulent activity." (4AC at ¶ 43.) Further, Plaintiff Brandt alleges that although she provided her credit card information to Defendant to pay for medical services, she never made online purchases with her credit cards and never transmitted "Sensitive financial Information on the Internet." (4AC at ¶ 54.) Under Rubio, these allegations are sufficient to establish that Brandt has standing to bring a claim against Defendant for violation of the UCL because she has alleged an actual economic injury resulting from Defendant's actions.

The Court also finds that Plaintiffs have sufficiently alleged unlawful, unfair and fraudulent business practices to support their UCL claim. To state a claim under the UCL, a plaintiff must allege that the defendant committed an act that constitutes an "unlawful, unfair or fraudulent business act or practice." An "unlawful act" is defined as "anything that can properly be called a business practice and that at the same time is forbidden by law." Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., 20 Cal.4th 163, 180 (1999). As such, the "unlawful" prong of the UCL effectively turns a violation of the underlying law into a per se violation of the UCL. Id. In contrast, "a practice may be deemed unfair even if not specifically proscribed by some other law." Id. An "unfair" practice is one that "offends an established public policy … or [is] substantially injurious to consumers." People v. Duz-Mor Diagnostic Laboratory, Inc., 68 Cal.App.4th 654, 658 (1998). Lastly, a business practice is "fraudulent" under the UCL if a plaintiff can show that "members of the public are likely to be deceived." Bardin v. DaimlerChrysler Corp., 136 Cal.App.4th 1255, 1261 (2006).

Here, Plaintiffs allege that Defendant acted in violation of the Health Insurance Portability and Accountability Act ("HIPAA") when it failed to implement policies and procedures for the treatment of Plaintiffs' sensitive information, provide adequate training on how to handle sensitive information, adequately supervise employees handling sensitive information, and adequately limit access to such information. (4AC at ¶ 99.) The Court finds that these allegations, combined with Plaintiffs' allegations that these actions violated HIPAA, are sufficient to establish that Defendant's engaged in an unlawful business practice.

The Court also finds that Plaintiffs have sufficiently alleged that Defendant engaged in unfair business practices in failing to protect Plaintiffs' sensitive information. Plaintiffs allege that "Defendant's conduct is unethical [because] Defendant entered into a services contract to obtain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

monetary gain from Plaintiffs and the Class, promised to safeguard the Sensitive Information of Plaintiffs and the Class, but failed to employ ordinary and reasonable procedures to protect this information." (4AC at ¶ 101.) Plaintiffs also allege that "Defendant can provide no adequate justification for its failure to employ adequate precautions to protect the Sensitive Information of Plaintiffs and Class members," while "Plaintiffs and Class members, on the other hand, have suffered from the disclosure of their Sensitive Information, by suffering actual identity theft, an increased risk of identity theft, and/or out-of-pocket costs to mitigate the effects of the data breach." (4AC at ¶ 102.)

Defendant contends that these allegations are insufficient because a breach of contract may only form the basis of a UCL claim if the breach also constitutes unlawful, unfair, or fraudulent conduct. See Puentes v. Wells Fargo Home Mtg., Inc., 160 Cal. App. 4th 638, 645 (2008). However, California courts have recognized that systematic breach of a consumer contract may constitute an unfair business practice under the UCL. See Smith v. Wells Fargo Bank, N.A., 135 Cal. App. 4th 1463, 1483 (2005). Here, the Court may reasonably infer that Defendant's alleged actions constituted a systematic breach of its promise to safeguard enrollees' confidential information, given that Defendant's alleged representations in the parties' contract appear to be part of a form consumer contract, and Plaintiffs allege that Defendant never instituted or enforced policies and procedures for securing enrollees' information. As such, Defendant's argument is without merit.

Plaintiff Gardner also sufficiently alleges that Defendant engaged in fraudulent business practices. Gardner alleges that Defendant represented that it protected its enrollees' information, but failed to disclose that it did not provide its employees with proper training and did not have proper policies and procedures in place for protecting this information. (4AC at ¶ 103.) Also, Plaintiff Gardner alleges that he relied on these representations insofar as he "would not have purchased health coverage from Defendant" if he had known that it did not have these policies and procedures in place. (4AC at ¶ 103.) Thus, Plaintiff Gardner has sufficiently pled that Defendant made misrepresentations to him, and that he actually relied upon these misrepresentations in purchasing health coverage from Defendant. See In re Tobacco II Cases, 46 Cal. 4th 298, 328 (2009). Accordingly, the Court finds that Plaintiff Gardner has sufficiently alleged that Defendant engaged in a fraudulent business practice.

### D. Claim for Violation of the Confidentiality of Medical Information Act

A new claim asserted in the Fourth Amended Complaint is Plaintiffs' claim for violation of California's Confidentiality of Medical Information Act ("CMIA"). Defendant contends that this claim fails because: (1) it is not a "health care service plan" that is subject to the CMIA; (2) Plaintiffs do not have standing to seek damages; and (3) Plaintiffs have failed to sufficiently allege that Defendant negligently released their information in violation of the CMIA. Because the question of whether Defendant is a "health care service plan" determines the applicability of the CMIA, the Court will address that issue first.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

Section 56.101 of the CMIA provides that "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101. The statute further provides that "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical records shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36." Id. A "health care service plan" is defined in the CMIA as "any entity regulated pursuant to the Knox-Keene Health Care Service Plan Act of 1975." Cal. Civ. Code § 56.05(d). Under Knox-Keene, a "health care service plan" is defined as "[a]ny person who undertakes to arrange for the provision of health care services to subscribers or enrollees, or to pay for or to reimburse any part of the cost for those services, in return for a prepaid or periodic charge paid by or on behalf of the subscribers or enrollees." Cal. Health & Safety Code § 1345(f)(1).

Here, Plaintiffs allege that Defendant is "an integrated managed care organization that delivers managed health care services through health plans and government-sponsored managed care plans." (4AC at ¶ 8.) Therefore, Plaintiffs contend, Defendant is a "health care service plan" subject to the CMIA insofar as it "provides health care services," "pays for . . . the cost for health care services through its various plans," and "receives premiums from its provision of '[h]ealth plan services,' particularly from 'HMO, POS, and PPO premiums . . . .'" (Opp. at 10; Request for Judicial Notice, Ex. C.)[2/] Plaintiffs also point out several cases in which Defendant's California entity -- Health Net of California -- has been recognized as a health care service plan. (Opp. at 10-11.)

Plaintiffs' argument is fundamentally flawed. Although it may be true that Defendant's subsidiaries, such as Health Net of California, may constitute health care service plans as defined by Knox-Keene, Plaintiffs specifically allege that Defendant delivers managed health care services *through* health plans and government-sponsored managed care plans. Likewise, Plaintiffs allege that Defendant provides health care services *through* its various health care plans. As such, Plaintiffs do not contend that Defendant itself arranges for the provision of health care services or receives charges paid by enrollees; rather, Plaintiffs merely allege that Defendant's subsidiaries engage in these activities. Because it is Defendant, and not any of its subsidiaries, that is a party to this action, Plaintiffs' CMIA claim fails. To the extent that Plaintiffs argue that a theory of alter ego liability should apply (Opp. at 11), the Opposition and the Fourth Amended Complaint are devoid of any allegations from which the Court may infer that such a theory has any basis here. As such, Plaintiffs' claim for violation of the CMIA is dismissed with prejudice.

---

[2/] Plaintiffs request that the Court take judicial notice of two documents reflecting the legislative history of the CMIA and the Form 10K filed by Defendant with the Securities and Exchange Commission on February 26, 2010. The Request for Judicial Notice is granted.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 10-2140 PA (CWx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | Kenneth Martin Gardner, et al. v. Health Net, Inc. | | |

### Conclusion

  For the foregoing reasons, Defendant's Motion to Dismiss the Fourth Amended Complaint is granted in part and denied in part. Plaintiffs' CMIA claim and Plaintiff Gardner's claims for negligence and breach of contract are dismissed with prejudice. Defendant's Motion is denied as to the remaining claims in the Fourth Amended Complaint. Defendant's Request for Judicial Notice is denied as moot.

  IT IS SO ORDERED.

:15<br>Initials of Deputy Clerk:PS